MARY L. SHOOT, Respondent, v. CHARLES DORIAN, Appellant.

**St. Louis Court of Appeals, April 29, 1889.**

Promissory Note : SURETY : INSUFFICIENT EVIDENCE. In the case of a promissory note signed by two joint makers, one of whom claimed to be only a surety for the other. and to have signed upon the representation and understanding ·that another person there present was to sign, and did sign, as an additional surety, the evidence being found wholly inapt and insufficient to establish any of the facts thus alleged, there was no error in an instruction that the jury should find for the plaintiff, and there can be no appellate interference with a judgment rendered for the same party.

*Appeal from the Knox Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

*O. D. Jones*, for the appellant.

The transaction being between the parties, principles applicable to negotiable paper do not govern. Plaintiff was present by her agent. Between her and this defendant, Wilson was her agent. When Pugh demanded to be released, she had choice to make him pay it, or become a party by consent to Wilson's plan of renewal. She chose the latter, and in it she and Wilson both were adverse in interest to defendant. Plaintiff accepted Wilson's offer in the matter in her and his own behalf—she made it possible for defendant to be deceived by Wilson. Admitted Wilson told defendant McGonigle was on old and was to go on new note. Plaintiff is a party in interest in the renewal with Wilson. Admitted defendant is deceived and

36—12

injured and she accepts the fruits of the fraud. *Biggs
v. Ewalt*, 51 Mo. 245 ; *Martin v. Singler*, 55 Mo. 577 ;
*Corby v. Weddle*, 57 Mo. 452. The only qualification is
he must not be at fault and negligent. *Shuts v.
Overjohn*, 60 Mo. 305. It is not fault or negligence to
rely upon the express representations of the party in
a matter like this. Wilson swears he believed for
years McGonigle was on the old note. Plaintiff and her
agent permitted him to be deceived and he to deceive
defendant. The facts in this case come under the rule
in *Ayres v. Milroy*, 53 Mo. 516. Lower court held
that case is overruled by *State to use v. Potter*, 63 Mo.
212. But here the matter is between the parties and
plaintiff is a party to the deceit that results in defend-
ant's injury. As to the facts of this case, the dissenting
opinion of NAPTON and SHERWOOD, JJ., 53 Mo. *supra*,
is against plaintiff. If the surety makes the principal
his agent to get other surety and delivers the note to an
innocent payee, he must "run the risk of the fraud of
his own agent." But here that situation is reversed—
(1) It is a renewal. (2) Plaintiff is a party to it—writes
the renewal note—lets Wilson believe her agent is a
joint maker of it—that he is to go on the renewal note
also ; he writes it, signs his name—defendant relying on
the representations of Wilson acting in her and his own
behalf as against defendant, sees McGonigle's name on
the note—true not under Wilson's ; but defendant knew
he was a man of business experience—it was good as
maker, but for the word "attest."

*William Clancy*, for the respondent.

No case will be reversed in the absence of error in
the record. R. S. 1879, sec. 3775 ; *Miller v. Newman*,
41 Mo. 509 ; *Dorschlein v. Orth*, 32 Mo. 366.
"The supreme court will not reverse the judgment
of the court below unless it appear that error has been
committed materially affecting the merits of the

action." *Garneau v. Herthel*, 15 Mo. 191. This case decides that "the supreme court will not interfere with a judgment upon the ground that the court rendering it has granted or refused a new trial, because of the verdict's being against evidence, or against the weight of evidence." The appellate court will not interfere with the discretion of the lower court in granting or refusing a new trial unless such discretion be abused, and a strong case made out. *Tucker v. Railroad*, 54 Mo. 177; *Nordman v. Hitchcock*, 40 Mo. 178; *Kribben v. Eckelkamp*, 34 Mo. 480. In this matter Dorian said not one word to plaintiff or her agent as to how he was going on the note or who was to sign with him, and he will not now be heard to set up this kind of a defense. The evidence is that then and there in the presence of Dorian and Wilson the man McGonigle wrote his name and the word attest all at the same time with the same pen and ink. Dorian swears he saw McGonigle in the act of writing his name, but did not see him write the word "attest." This is a hard thing to believe. If he did not, it was his own fault; he saw that as well as the name McGonigle.

BIGGS, J., delivered the opinion of the court

The plaintiff instituted a suit against the defendants on the following promissory note, to-wit:

"$1000.00.                    May 26, 1887.

"One year after date, we or either promise to pay to the order of Mary L. Shoot, one thousand dollars for value received, negotiable and payable without defalcation or discount and with interest from date at the rate of ten per cent per annum, and if the interest be not paid annually, to become as principal and bear the same rate of interest.

his<br>
"JOHN x WILSON,<br>
mark.<br>
"CHARLES DORIAN.

"Attest: W. P. McGONIGLE."

The defendant Wilson made no defense. The appellant Dorian filed a separate answer in which he admitted the execution of the note by him, but sought to escape liability by alleging the following state of facts, to-wit: That he signed the note sued on as a surety for his co-defendant Wilson, and that the note was a renewal of another note to plaintiff, signed by defendant Wilson as principal and one Pugh and W. P. McGonigle, the attesting witness to the note sued on, as sureties. That McGonigle was the agent of plaintiff and had charge of all her business, and that defendant agreed with McGonigle and Wilson that he would sign the renewal note provided McGonigle would also become surety with him. That with this understanding, he signed the note believing at the time that McGonigle had signed the note as a surety, and not merely as a witness to Wilson's signature.

Plaintiff's reply put in issue the matter set up in the answer.

The cause was tried by a jury, and was submitted under instructions presenting the defense sought to be made by defendant Dorian in his separate answer. The jury failing to agree promptly the court withdrew from the consideration of the jury the instructions previously given, and instructed the jurors to return into court a verdict for plaintiff for the full amount of the note.

There was judgment for plaintiff for the amount of the note and the defendant Charles Dorian prosecutes this appeal. As no complaint is made as to the admission or rejection of testimony the only question presented by the record for our determination is the propriety of the court in directing a verdict for plaintiff.

At the beginning of the trial the defendant Dorian claimed and assumed the affirmative of the issue, and we need only ascertain if he supported his defense by *substantial proof*. If he failed in this, then the action of the trial court was right.

In the first place, defendant failed to introduce any satisfactory proof that McGonigle signed the original note to plaintiff. Neither Wilson, the maker, nor Pugh, the surety, would swear that McGonigle signed the note. Pugh said that his *impression* was that McGonigle signed the note. He said that at one time he spoke to McGonigle, as the agent of plaintiff, concerning his release from the note and McGonigle told him that there was one way, that he could be released, and that was by *paying* the note.

If McGonigle had been a co-surety with Pugh, this would certainly have been the subject of discussion when Pugh was endeavoring to be released from the note, because this action would necessarily increase McGonigle's liability. And if it had been talked of between them, Pugh would certainly have remembered it. And the statement made by McGonigle to Pugh that *he* (Pugh) could be released by paying the note, was allowed by Pugh to pass without comment. If McGonigle's name was to the note, Pugh would certainly have suggested to McGonigle (who was perfectly solvent), that *his* assistance would be needed in a transaction of that sort.

McGonigle swears that the original note was signed by Wilson and Jacob Pugh, and that Wilson's signature was attested by Frank McCauley.

The record in this case disclosed no satisfactory proof that McGonigle signed the original note, nor is there a scintilla of testimony that Dorian signed the renewal note, under any agreement with plaintiff or McGonigle, that the latter should also become a surety thereon. Defendant Dorian swears that this was the understanding between him and Wilson, but the evidence fails to show that either plaintiff or McGonigle had *any notice* of such an understanding. McGonigle swears that he, as agent of plaintiff, took the note from defendants without any notice or information from any

one, that he was expected to sign the note. That Wilson could not write, and that he wrote Wilson's name and attested his signature as the note shows, and that then Dorian signed the note, without asking any questions. Wilson and Dorian corroborate McGonigle in these statements.

It is insisted by counsel for appellant that in obtaining the renewal note, Wilson was plaintiff's agent, and that as Wilson had notice of the conditions upon which Dorian signed the note, then in such case, notice must be attributed to plaintiff. We don't think that this position is tenable. The burden of proof in the case was on the defendant Dorian, and as he failed to support the issues presented by his answer with *any substantial proof*, the trial judge did right in directing the jury to find for plaintiff.

There is no error in the record, and with the concurrence of the other judges, the judgment of the circuit court will be affirmed.